In the Matter of the Judicial Settlement of the Accounts of HENRY HUSS, Executor, etc.

*136-142.*

When proof of a law of a foreign state has been given from a publication made under authority of the government of that state, in the absence of equally good evidence that it has been changed or repealed, it is to be considered as the existing law.

G., by his will, gave one-fourth of his residuary estate to the community of H., a municipality in the Grand Duchy of Baden, a state of the German Empire. Upon the accounting of his executor, the legal capacity of said municipality to take its distributive share of the personal estate was questioned. It was proved by the German vice-consul, who had filled a judicial position and was acquainted with the laws of the different states of the empire, that the Grand Duchy of Baden had an unwritten law which gave to "communities," by which term cities or townships were characterized, the right to acquire and manage property and take by bequest. A copy of the laws and statutes of the Grand Duchy, printed by governmental authority in the official printing office in 1832, was also introduced in evidence and from it proof given that such communities have a right to take and hold property. It was proved that since the publication of said book of statutes, a legislature has existed in said Grand Duchy. The surrogate held that the evidence was insufficient to show that the law relied upon to show corporate capacity was in force at the time of the testator's death. *Held*, error.

The laws of this state do not prohibit a testamentary bequest to a foreign municipality, and the ability to take depends upon the law of the legatee's domicile.

*Hynes* v. *McDermott* (82 N. Y. 41), distinguished.

(Argued April 29, 1891; decided June 2, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made February 10, 1890, which affirmed a decree of the surrogate of Westchester county upon an accounting by the executor of the last will and testament of Sebastian Gehrig, deceased.

The facts, so far as material, are stated in the opinion.

*Richard M. Bruno* and *Edwin Countryman* for appellant. The court was bound to decide the case according to the undis-

puted evidence, and a failure to do so was an error of law for which the judgments below should be reversed. (*Plyer* v. *German*, 121 N. Y. 692; *Lomer* v. *Meeker*, 25 id. 361; *Kelly* v. *Burroughs*, 102 id. 93, 95, 96; *Watson* v. *Campbell*, 38 id. 153, 155, 157; *E. Ins. Co.* v. *Aldrich*, 26 id. 92; *Potter* v. *Chadsey*, 16 Abb. Pr. 146, 147, 150; *Huntington* v. *Conkey*, 33 Barb. 224, 225; *Millerd* v. *Thorn*, 56 N. Y. 402, 405; *Brush* v. *Wilkins*, 4 Johns. Ch. 520; *Hynes* v. *McDermott*, 82 N. Y. 58.) The witness Ferrie was shown to be entirely competent to testify to the law of Baden as to the right of appellant to take the legacy. (*Kenny* v. *Clarkson*, 1 Johns. 386; *American* v. *Rosenagle*, 77 Penn. St. 507; *Hall* v. *Costello*, 48 N. H. 176; *Pickard* v. *Bailey*, 26 id. 152; *Vander Donckt* v. *Thellusson*, 8 C. B. 812, 816, 823, 824; *Lacon* v. *Higgins*, 3 Starkie, 179; *Brush* v. *Wilkins*, 4 Johns. Ch. 520; *McFadden* v. *Mitchell*, 61 Cal. 148; *Bearss* v. *Copley*, 10 N. Y. 93; *Robertson* v. *Knapp*, 35 id. 91; *Moore* v. *Westervelt*, 27 id. 241.) The appellant was shown, without contradiction, to be a corporation, a body corporate, entitled to take property by bequest. (*People* v. *Calder*, 30 Mich. 88; *Roby* v. *Sedgwick*, 35 Barb. 326; *Thomas* v. *Dakin*, 22 Wend. 70; 1 Morawetz on Corp. §§ 2, 320, 324; *P. Bank* v. *Billings*, 4 Pet. 562; 4 Wheat. 636; *Louisiana* v. *Mayor*, etc., 109 U. S. 287; *Philadelphia* v. *Fox*, 64 Penn. St. 180; *Root* v. *Eidelmeyer*, 1 Wilson, 106; Angel & Ames on Corp. §§ 15, 23; 1 Dillon on Mun. Corp. [4th ed.] §§ 3, 19; *Kilmore* v. *Magee*, 35 Penn. St. 411; *People* v. *Morris*, 13 Wend. 333.) It having been shown, without contradiction, what the written law of Baden was in 1832, the law presumes it has remained so until legal proof of a change. (*Rayham* v. *Canton*, 3 Pick. 293; *Dougherty* v. *Snyder*, 15 S. & R. 84; *Livingston* v. *M. Ins. Co.*, 6 Cranch. 274; *Hynes* v. *McDermott*, 82 N. Y. 57; *Sleeper* v. *Van Middlesworth*, 4 Den. 431; *McMahon* v. *Harrison*, 6 N. Y. 443; *Wilkins* v. *Earl*, 44 id. 172, 192; 1 Greenl. on Ev. § 41; 2 Morawetz on Corp. [2d ed.] § 775; Angel & Ames on Corp. § 757; *People* v. *M. Co.*, 9 Wend. 351, 379; *Darrell* v. *Hilligoose*, 90 Ind. 264; *Covert*

v. *Gray*, 34 How. Pr. 450 ; *Stokes* v. *Machen*, 62 Barb. 148 ;
*Harryman* v. *Roberts*, 52 Md. 76 ; Code Civ. Pro. § 942 ;
*Hall* v. *Costello*, 48 N. H. 176.) A legacy to a municipal or
other corporation of money to be used in furtherance of its
purposes is valid. (*Dickson* v. *United States*, 125 Mass. 313,
315 ; *Hathaway* v. *Sackett*, 32 Mich. 97, 100, 101 ; *Whittaker*
v. *Hume*, 7 H. L. Cas. 124, 155 ; 1 Perry on Trusts [4th ed.],
§ 63 ; *Chamberlain* v. *Chamberlain*, 43 N. Y. 424 ; *In re
McGraw*, 111 id. 84 ; 1 R. S. 599, §§ 1, 3 ; *Merrick* v. *Van
Santvoord*, 34 N. Y. 268 ; 2 Morawetz on Corp. [2d ed.]
§ 961 ; 2 Dillon on Mun. Corp. [4th ed.] § 566.) No trust
was created by the bequest in question, nor was there the
slightest attempt to make the legatee a trustee. But if there
were, the legacy was payable to the corporation, to be taken
by it as any property is. (*Chamberlain* v. *Chamberlain*, 43
N. Y. 432.) The community, although unincorporated, could
take the legacy bequeathed to it, if empowered so to do by the
law of its domicile. (*Newland* v. *Attorney-General*, 3 Meriv.
684 ; *In re Bullock*, 11 N. Y. S. R. 700 ; *Chamberlain* v.
*Chamberlain*, 43 N. Y. 424.)

*Jacob F. Miller* for respondent. There was no proof that
the Community Hochhausen had a right to take property by
bequest. (*Sherwood* v. *A. B. Society*, 1 Keyes, 565 ; *Cham-
berlain* v. *Chamberlain*, 43 N. Y. 432 ; Dillon on Mun. Corp.
§ 19 ; Morawetz on Corp. §§ 3, 6 ; *Dartmouth College* v.
*Woodward*, 4 Wheat. 636.) Corporations organized under
the laws of this state must, to take by bequest, not only prove
their incorporation, but also that the gift may pass to them
under their charter. (*In re McGraw*, 111 N. Y. 84 ; *Holland*
v. *Alcock*, 108 id. 334 ; *Owens* v. *M. Society*, 14 id. 380.)
But whether the community was or was not so incorporated and
authorized to take, was dependent upon foreign law, the law
of Baden. For purposes of judicial proceedings foreign laws
are facts which must be alleged and proved as any other facts.
The fact to be proved is " the existing law." (Code Civ. Pro.
§ 942 ; *Hynes* v. *McDermott*, 82 id. 57 ; *Toulandon* v. *Lachen-*

*meyer*, 6 Abb. [N. S.] 215–220 ; 37 How. Pr. 145 ; *Kenny* v. *Clarkson*, 1 Johns. 385 ; *Owens* v. *M. Society*, 14 N. Y. 380 ; *Levy* v. *Levy*, 33 id. 100 ; *Beekman* v. *Bonsor*, 23 id. 298 ; *Rose* v. *R. B. Assn.*, 4 Abb. Ct. App. Dec. 108 ; *Bascom* v. *Albertson*, 34 N. Y. 584 ; *Burrill* v. *Boardman*, 43 id. 254 ; *Holland* v. *Alcock*, 108 id. 325.) The General Term affirmed the surrogate's degree, thereby approving the surrogate's findings of fact as well as conclusions of law. The questions of fact are no longer open to review. (*Nostrand* v. *Knight*, 123 N. Y. 618.)

GRAY, J. The testator gave one-fourth of his residuary estate to the Community of Hochhausen, a municipality situated in the Grand Duchy of Baden, a state of the German Empire, and the question raised upon the settlement of the accounts of his executor was whether it has legal capacity to take its distributive share of the personal estate ; no claim being made upon the realty. The surrogate decreed adversely to the claim of the legatee, his decree reciting that the proofs were insufficient to allow it to take any of the property, or to be a legatee under the laws of this state. This decree has been affirmed by the General Term. The surrogate expressly found that the legatee had been a municipal body for the past nine hundred years, but refused to find that, by the unwritten or by the written laws of the country, it was authorized to take and hold bequests of personal property, or to hold personal property as a corporation. In so ruling upon the question of the legatee's legal capacity I think the surrogate has erred. By a competent witness, in the person of the German vice-consul, who, before entering upon the foreign service of the German Empire, had filled a judicial position, and was acquainted with the laws of the different states composing that empire, it was proved that the Grand Duchy of Baden had an unwritten and a written law. By the unwritten law of the country " communities," by which term a city or township was characterized, had the right to acquire and to manage property, and to take by bequest. A copy of the laws and statutes of

the Grand Duchy, printed by governmental authority in the official printing office, in 1832, was offered in evidence, and from it proof was given that "every community has a right to administer its affairs as a community, and to manage property independently for itself," and that "all movable and immovable property of communities is the property of the citizens," as "a corporation," or "as a body," or "as a whole" (the German word in the act being the equivalent of these terms). This witness gave the only evidence in the case, and nothing was offered in contradiction of it, nor any other proof given upon the question of what was the law of the domicile of this legatee.   But because it appears that since the publication of the Grand Ducal laws and statutes in 1832, a legislature has been in existence, and that the evidence of the witness that these statutes and the unwritten law, concerning which he had testified, remained in force was predicated upon the fact that, by virtue of his official position, he would have been made acquainted with any changes by legislative enactment, it was thought that the proofs were insufficient.   The surrogate held that it must be shown that the law relied upon to establish the corporate capacity was in force at the time of the testator's death, and that the evidence here was merely hearsay, and, therefore, incompetent.   He also held, upon the authority of *Hynes* v. *McDermott* (82 N. Y. 41), that there was no presumption of the continued existence of the earlier law.   That case is not controlling upon the question here. The books offered upon the trial in that case, as containing the laws of France, were the publication of a private person. They were not proven, nor did they purport to have been published by governmental authority, and were then seen for the first time by the witness.   Moreover, one of the volumes was edited at a date subsequent to the transaction, to which they were sought to be made applicable.   Nor was it considered that the evidence of the witness as to the reception of these private works in the French courts amounted to proof of that fact.   Upon the question of whether the presumption should prevail that a law once shown to have existed continued.

the same until the time of the event, about which the contro-
versy turned, the court refused to pass definitely, as being
unimportant to the decision. Chief Judge FOLGER intimated,
however, pretty strongly, on the authority of *Raynham* v.
*Canton* (3 Pick. 293), that if the question of presumption was
in the case the court would have to make it. In *Raynham*
v. *Canton*, in connection with proofs relating to a marriage in
Rhode Island in 1817, a volume of the laws of that state, pub-
lished by its authority in 1798, was offered, but it was rejected
upon the mere objection, or denial interposed by counsel, that
the law so evidenced was not the law at the time of the mar-
riage. Judge PARKER, delivering the opinion of the Supreme
Court in reversal of the judgment, held that " the law being
proved to have existed in the manner above stated, it must be
presumed to exist until proved by as good evidence to have
been repealed."

I think the rule in the Massachusetts case should be adopted
by us as correct, upon principle. The rule of presumption, as
applied to the continuance of a law, may well rest upon the
same basis that is found for similar presumptions in many
human affairs. In Greenleaf on Evidence (Vol. 1, § 41), the
author states the rule that when " the existence of a person, a
personal relation, or a state of things, is once established by
proof, the law presumes that the person, relation or state of
things continues to exist as before, until the contrary is shown,
or until a different presumption is raised from the nature of
the subject in question." In *People* v. *Manhattan Company*,
(9 Wend. 351), is an illustration of the rule, where it was held
that a corporation having been shown to have been legally
created, it is, " in the judgment of law, supposed to continue
to exist until the contrary is shown."

If, in such instances, the presumption should obtain, how
much greater the reason for it in the case of a public law in a
foreign state or country. In addition to the Massachusetts
case of *Raynham* v. *Canton*, there is to be found authority
for the rule, in the opinions of the courts of other states. In
*People* v. *Calder* (30 Mich. 85), the question arose as to the

law governing marriage in the state of New York in 1869. A volume of New York statutes, printed in 1852, was held to be competent proof of what the law was; the court considering that, as no proof was offered to indicate a change in the law, the jury might fairly presume that it continued as it was. In *Harryman* v. *Roberts* (52 Md. 64), a volume of Ohio Revised Statutes, published in 1860, was admitted as evidence of the existing law of that state, when the question to which it was made applicable arose in 1879. (And see *State* v. *Patterson*, 2 Ired. [N. C.] 356.) It may be observed that the very notion of a law, as furnishing a rule of government or of conduct, suggests permanence as a characteristic and does not involve the idea of change. I am led to the opinion that when proof of a law of a foreign state has been given, from a publication made under govermental authority, the rules and principles of evidence entitle it to be considered as the existing law of the land, in the absence of some equally good evidence that it has been changed or repealed.

We have, then, in this legatee a collective body of individuals, which has existed for past hundreds of years as a municipality, under the description of a "community." It had acquired and by the unwritten or common law it possessed and exercised certain rights of self-government and powers to acquire and to manage property for itself. By enactments of the Grand Ducal government its franchises and powers were recognized and confirmed to it. The public statutes, in providing that all the property of a community is the property of its citizens, as a corporation, or as a body, in fact, thereby invested the existing municipal body aggregate with an essential attribute of a corporation. This legislation would seem to have amounted to an incorporation by sovereign recognition and grant of powers and franchises. But whether chartered, or incorporated by statute or not, we are bound to consider the community as an artificial legal person. In Germany, in the eye of the law, it is a "judicial person," according to the evidence of the witness in this case, as under

the Roman law, in the classification of the writer Savigny, it was a " juristical person."

It is conceded by the law such powers and rights as to give it the character of individuality and to enable it to take, hold and administer upon property. The ability to take the testamentary bequest depends upon the law of the legatee's domicile. Our laws do not prohibit the bequest or the taking, and the sole question to be considered relates to the legatee's capacity. (See *Chamberlain* v. *Chamberlain*, 43 N. Y. 424.)

When we find that by the customary or common law of the place of its domicile, confirmed by a public statute, this "community" was entitled to take, hold and manage property in the right of its citizens, or as a whole, or as an aggregate body incorporate, we need proceed no further in search of capacity to take the legacy.

For the reasons stated, I think that the judgment of the General Term and so much of the surrogate's decree as has been appealed from should be reversed and that it should be decreed that this appellant is entitled to take its share of the personalty under the bequest in the will, with costs to the appellant here and in the courts below to be paid out of the estate.

All concur.

Judgment accordingly.