## SULLIVAN v. DUNHAM et al.

(Supreme Court, Appellate Division, Second Department.   December 13, 1898.)

1. ATTORNEY AND CLIENT—ADMISSIONS—EVIDENCE.
    An admission of counsel, in order to work an estoppel against his clients,
    must conclusively appear.

2. NEGLIGENCE—BLASTING NEAR HIGHWAY—CONTRIBUTORY NEGLIGENCE.
    While on a highway, intestate was told by one of defendants' employés:
    "Walk along down the road.   We are going to have a blast.   You have
    lots of time."   She walked 249 feet in the following 10 minutes.   The
    blasting, which was from adjoining land, threw a tree into the air, which
    fell on intestate at a point 412 feet from where the blast was made.   Held
    not to show contributory negligence as a matter of law.

3. MASTER AND SERVANT—INDEPENDENT CONTRACTORS—EVIDENCE.
    Defendants entered into a contract for clearing land of ledges.   The
    defendant who made the contract testified that he was to furnish teams
    and men for a certain price, and that either he or his co-defendant was
    to be present, and act as foreman, under the direction of W., who was
    the landowner's foreman, and was to do the work pursuant to his direc-
    tion; and that in carrying on the work they did not usually do anything
    that W. did not first tell them to do.   Defendants received pay as fore-
    men at a given price per day, and the labor, material, etc., were paid for
    at cost, and bills rendered therefor, with a percentage added as profit.
    The landowner testified that he gave directions to W. as to the manner
    and means of doing the work, but that he gave no directions, either him-
    self or through W., to defendants, except in the expansion of the work,
    and in additional items of work to be done.   The injury to plaintiff's
    intestate was caused by the blasting of a tree which was thrown into the
    air and fell on intestate.   W. had ordered it to be taken out whole.   Held,
    that the question whether the relation of master and servant existed be-
    tween defendants and the owner of the land was for the jury.

4. SAME—NEGLIGENCE OF INDEPENDENT CONTRACTOR.
    The owner of property is not liable for the acts of an independent con-
    tractor, where the injury resulted not from the work being done, but
    from the method adopted in doing it.

5. SAME—LIABILITY OF SERVANT TO THIRD PERSON.
　　A servant is himself liable for an injury produced by his affirmative misfeasance.

Appeal from trial term, Westchester county.

Action by Mary Sullivan, as administratrix of the goods, chattels, and credits of Annie E. Haten, deceased, against Carroll Dunham and others. From a judgment entered on a verdict for plaintiff, and from an order denying a new trial, defendants appeal. Defendants Theodore H. Dinkel and Philip Jewell appeal from an order denying their motion to correct the verdict by striking their names therefrom and allowing the verdict to stand against the defendant Dunham alone. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Isaac N. Mills and George C. Andrews, for appellants.
Sumner B. Stiles (Francis L. Wellman, on the brief), for respondent.

HATCH, J. When this case was before us on the former appeal, we held that liability for the act of firing the blast did not rest upon the ground of negligence, but fell within the domain of wrongful trespass. Upon the present trial the case was not changed in this regard, and the ruling of the court excluding evidence offered to show absence of negligence upon the part of the defendants was proper. We also held that, while the deceased had the right to assume that her safety would not be imperiled by any wrongful trespass upon the part of the defendants, yet, having been warned of an existing danger, the law imposed a duty of using such reasonable means as would then enable her to protect herself therefrom; that she could not voluntarily and knowingly remain in a place of danger, which was within her power, in the exercise of reasonable care, to avoid, without subjecting herself to the imputation of negligence. For error of the court in excluding evidence tending to establish the absence of reasonable care upon the part of the deceased after she had received the warning, and for error in charging the jury that this question was not to be considered by them, we reversed the judgment, and granted a new trial. Sullivan v. Dunham, 10 App. Div. 438, 41 N. Y. Supp. 1083. Upon the present trial, proof bearing upon this question was received and submitted to the jury by the court, and by their verdict the jury have exonerated the deceased from any negligence contributing to her death. It is insisted by the defendants, however, that the undisputed proof establishes that the deceased was guilty of contributory negligence, and that the trial court was in error in refusing so to hold as matter of law. The substance of this claim is that the deceased was personally warned of the intending blast and its danger about 10 to 12 minutes before the blast was fired, and that after such warning other persons were sent out to cry "Fire!" which was the usual warning, and which the deceased understood, and that such persons did cry "Fire!" in her immediate locality; that she must have heard this cry, practically continuous for at least five minutes prior to the firing of the blast, and that in the face of the warning, and the cry of the other persons, the deceased made

little, if any, effort to avoid the danger, remained in the immediate vicinity in dangerous proximity to the blast, and only walked during the whole period a distance of 249 feet. The earnest insistence and the exhaustive and able discussion of this question by the defendants' counsel have led to its careful examination. The argument in its support is built up, at least in part, upon an assumption of a fact and inferences which arise from this assumption and the other proof. If the assumption fails, the basis for the argument is very much shaken. The argument assumes that the deceased walked but 249 feet after she was warned. This assumption is scarcely warranted from what appears in the record. The witness Michael Kenny, who informed the deceased that a blast was to be fired, testifies that he met her upon the Harriman road, "about five hundred feet east of the corporation line." He is the only witness that speaks upon this subject. If the point where he delivered the warning was 500 feet east of the corporation line, then the deceased walked, after receiving the warning, about 749 feet, as it is conceded that she went 249 feet beyond the corporation line, west, before she reached the point where she was struck. Counsel seek to break the force of this statement by the claim that it was admitted that Kenny gave the warning at or near the corporation line. This claim is built up by taking the statement of Kenny that he walked east to Cock Robin Lane, and thence to his house, after meeting deceased. He stated: "It is a pretty good distance from this place where I met the girls to the house where I lived. They call it 1,800 feet. I don't know whether it is true or not. I did not measure it." Counsel for defendants then stated it is marked on the map "817 feet from the point where he met the girls." Plaintiff's counsel corrected the figures to 812, which were the figures upon the map. So far as the statement of the witness is concerned, it does not appear that he assumed that the corporation line was where he met the girls. He took no part in the discussion between counsel. If he was correct in his idea that his house was 1,800 feet distant from where he met deceased, it would have removed the deceased to a point beyond where she was struck when he gave the warning. If it was 500 feet east of the corporation line, he still had over 300 feet to go to reach his house, and did go some distance further than this, as he first went to the lane. The colloquy between counsel cannot be construed as an admission. There is none in terms; none was asked, and the correction of statement related to the figures upon the map. We do not think that the jury were bound to conclude that the distance walked by the deceased was only 249 feet, in view of the statement, in no wise denied or corrected by the witness, that he met the girls 500 feet east of the corporation line. The distance was for the jury to determine upon the testimony, and the statement by the defendants' counsel did not conclude them upon this question; nor was the correction of the figures by plaintiff's counsel conclusive as an admission of the particular spot as the corporation line. Admissions, to be available,—certainly those working an estoppel,— must conclusively appear. It may not, therefore, be conclusively affirmed that deceased only walked 249 feet after being warned. The language of the warning was quite indefinite. Kenny said he stated

to the deceased and her companion: "Walk along down the road. We are going to have a blast. You have lots of time." Nothing in this warning conveyed any notice from what point the blast was to be fired, how far away it was, or how far the deceased was required to walk in order to be beyond the danger line. There was certainly nothing in the statement which conveyed, or was calculated to convey, the idea that a blast was ready to fire, which would throw a tree over 60 feet into the air, and to a distance of 412 feet from the point of the blast. It could scarcely apprise the deceased that the road upon which she then traveled was to be rendered so exceedingly dangerous. At least such question was for the jury. The deceased did walk along down the road; how fast does not appear. The statement that "you have lots of time" was calculated—at least the jury were authorized so to say—to lull them into a sense of security in proceeding in the most leisurely manner. If they continued to walk, they had every reason to suppose that they would be carried beyond the danger line, wherever that was, as they were assured of plenty of time for that purpose. When the warning was given, they were walking west, and when they were seen just before the accident they were still walking in the same direction. It is said that they should have accelerated their speed by reason of the cry of "Fire!" proceeding from other persons. It can scarcely be expected, if they heard these cries, that they were calculated to awaken any serious conception of danger beyond such as they were already under. The cries cannot be held to add anything to the warning which the deceased concededly received, or to subtract anything from the character of the warning. It may, we think, be assumed that deceased knew that the cries were a warning for the same blast, as in fact they were; and as to that blast she was already assured she had plenty of time to reach a place of safety. Nothing, therefore, in this fact, was calculated to convey that any other or greater danger existed than was conveyed by the warning she had received. Besides, the jury might have concluded that she did not hear any cries of this character. Many persons heard continuous cries; some only one; and this from three to five seconds before the blast. The only certain proof we have as to the deceased having heard or otherwise received notice aside from the verbal warning was when the boy beckoned, and she started to run, and, while running, met her death. Upon the former trial, although it was assumed that deceased walked but 249 feet after she was warned, we declined to say that this constituted negligence as matter of law. We should hardly so say now, if we assume that in fact she walked only this distance. Distances traveled, time spent between particular events, and sounds heard, depending for certainty, as they do, upon a variety of circumstances and conditions, cannot be said to point conclusively to a certain inference. The most that can be claimed for such proof is that it permits of an approximation within certain limits, and whether a given act falls inside such limit when it may well fall outside is for the jury to say, and this case calls for the application of such rule. Upon all the proof, we are clearly of the opinion that upon the question of contributory negligence the case was properly submitted to the jury, and their finding must now be regarded as conclusive.

Upon the former appeal we declined to discuss or determine what the legal relation was between the defendant Dunham and the defendants Dinkel and Jewell. This question is presented upon this appeal, and we are required to determine it. The learned counsel for the defendant Dunham claims that the supreme test is: "Did the agreement provide for a result to be accomplished by the employé, and did it leave to the employé the means and method by which that result was to be accomplished? If it did, then the relation is that of employer and contractor, and not that of master and servant." We accede to this view of the law, as it is in accord with the authorities upon this subject. Hexamer v. Webb, 101 N. Y. 377, 4 N. E. 755; Butler v. Townsend, 126 N. Y. 105, 26 N. E. 1017; Herrington v. Village of Lansingburgh, 110 N. Y. 145, 17 N. E. 728. Measured by this rule, we think the evidence required the submission of the case to the jury. Jewell, who made the contract with Dunham, testified that he was to furnish teams and men for a certain price, and that either he or Dinkel was to be present, and act as foreman under the direction of Ward, who was Dunham's foreman, and was to do the work pursuant to his direction. Ward was present a part of the time while the work was progressing, and pointed out what was to be done. The witness said, "We did not usually do anything that Ward did not first tell us to do." The directions given by Ward consisted in pointing out the particular piece of work to be done, such as the excavation for the foundation of a barn and construction of a ditch. For new pieces of work Dinkel and Jewell went to Ward. He directed them to take the trees out whole. The defendants Dinkel and Jewell received pay as foremen, at a given price per day, and the men, material, and expense were paid for at cost, and bills rendered therefor, with a certain percentage added as profit. The defendant Dunham's version of the contract did not differ greatly from the version of Jewell. He stated, in terms, that he said a good deal to Mr. Ward on the subject of giving directions to Dinkel and Jewell, "as to the manner or method and means of doing this work, before I left; also while I was there before I had made my plans for going." Dunham was present when the work began, but while it was in progress he went away, and subsequently communicated with Ward in reference to the work. Dunham also testified that he gave no directions, either himself or through Ward, to Dinkel and Jewell, except in the expansion of the work, and in additional items of work to be done. The evidence created conflicting inferences. If the arrangement was that Dunham was simply to give directions as to the work to be done, and did not give, or had no authority to give, direction as to the manner in which it should be done, or as to the means to be used in performing it, then he would not be liable for any injury resulting from the method of its performance, as there would be no relation of master and servant. But the evidence authorized a different inference from this. As we have seen, Dunham said that he did give directions as to the manner, method, and means of doing the work, and Ward carried out this view when he directed that the trees should be taken out whole; and he gave such direction in relation to blasting the particular tree out of which the injury arose. It was not necessary that the di-

rections should embrace every detail in doing the work. If the right was reserved to give directions, then it would not matter that he chose to leave it, in many respects or in all, to the judgment of the contractors. In fact, if Ward directed that the tree should be taken out whole, as it stood, the jury would be authorized to find that the right was reserved to exercise control in the detail of doing the work. This was the view upon which the learned court below submitted the case to the jury. The charge contained a clear exposition of the law which governed the rights and liabilities of the parties under any view which the jury were authorized to accept upon the evidence submitted.

The contention of the plaintiff that liability attaches, even though the relation be that of independent contractor, cannot be sustained. Such rule does not apply unless the work itself creates the injury. Downey v. Low, 22 App. Div. 460, 48 N. Y. Supp. 207. In the present case it is quite clear that the injury arose, not from the work being done, but from the method adopted in doing it. The liability of Dinkel and Jewell is established in whatever view we regard their relation to Dunham. The finding of the jury against them has support in the testimony, as they were authorized to find that the injury was produced by the affirmative misfeasance of such defendants. Murray v. Usher, 117 N. Y. 542, 23 N. E. 564.

The motion for a new trial, based upon the affidavits, was properly denied, even if it be assumed that the affidavits of the jurors could be received. There was a conflict·of proof upon the subject, and we see no reason for interfering with the determination of the court below.

We are asked to re-open the question determined under our former decision. We are not convinced, by the argument submitted to overthrow it, that the decision is wrong. On the contrary, a re-examination of the question confirms our former view.

These views lead to an affirmance of the judgment.

Judgment and order affirmed, with costs. All concur.