## BURKE v. CITY & COUNTY CONTRACT CO. et al.

(Supreme Court, Appellate Division, Second Department.   June 4, 1909.)

1. MASTER AND SERVANT (§ 316*)—INDEPENDENT CONTRACTORS.

    Defendant, the assignee of a contract for the construction of a railroad, also assumed a contract by which one R. agreed to employ and work on the grading of the railroad, at such points and in such numbers as should be designated by the chief engineer of the road, certain laborers, quarrymen, etc., and to supply them with the necessary tools, etc., agreeing that the rate of pay should be the lowest rate at which they could be obtained, and that it should in no case exceed, without the consent of the engineer, certain specified rates.   R. further agreed to personally superintend the work and to give every facility to the timekeeper of the company to check the pay rolls.   The railroad agreed to refund to R. the amount of wages paid to the employés, and of material used as authorized by the engineer, together with 10 per cent. additional as compensation for the services of R. and for the tools used by him.   *Held*, that R. was not an independent contractor, so as to relieve defendant from liability to an injured employé.

    [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 316.*]

2. EVIDENCE (§ 67*)—PRESUMPTIONS—CONTINUANCE OF LAW.

    Where a city ordinance was shown to be in force on a certain date, the presumption was that it continued in force until the contrary was shown.

    [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 103; Dec. Dig. § 67.*]

3. APPEAL AND ERROR (§ 232*)—OBJECTIONS NOT RAISED BELOW.

    Where the particular objection to the reception of an ordinance in evidence, which was called to the trial court's attention and which was relied upon on appeal, was without force, it was too late to urge other objections.

    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1426–1431; Dec. Dig. § 232.*]

4. MASTER AND SERVANT (§ 270*)—PERSONAL INJURIES—NEGLIGENCE—VIOLATION OF CITY ORDINANCE.

    In an action for personal injuries by a servant engaged in blasting, the violation by the master of an ordinance regulating the use of explosives was some evidence of negligence.

    [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 270.*]

5. DAMAGES (§ 132*)—PERSONAL INJURIES—EXCESSIVE DAMAGES.

    Where plaintiff, a servant, who was earning $4 per day, lost the use of his right arm, had three ribs broken, and suffered greatly, a verdict for $9,000 was not excessive.

    [Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385; Dec. Dig. § 132.*]

    Gaynor, J., dissenting in part.

Appeal from Trial Term, Westchester County.

Action by John F. Burke against the City & County Contract Company, impleaded, etc.   From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, it appeals.   Affirmed.

Argued before WOODWARD, JENKS, GAYNOR, BURR, and MILLER, JJ.

George S. Graham (Ralph Polk-Buell, on the brief), for appellant.
Frederick W. Sparks (Roy C. Gasser, on the brief), for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

WOODWARD, J. The plaintiff was concededly injured, his right arm being rendered useless in the performance of manual labor, by being struck by a piece of rock, blasted out in the course of work in preparing the roadbed for the New York, Westchester & Boston Railway Company; the defendant company having had charge of the said blasting work. While the defendant upon this appeal insists that the evidence does not disclose negligence on the part of the defendant, or evidence of lack of contributory negligence on the part of the plaintiff, the record shows that there was evidence which the jury might find to support the plaintiff's cause of action, and we are of the opinion that these questions were properly left to the jury for determination.

The New York, Westchester & Boston Railway Company entered into a contract with one Smith for the construction and equipment of its road from 177th street, in the borough of the Bronx, to Portchester, in Westchester county, for which Smith was to receive stock and bonds of the railroad. Smith assigned this contract to the defendant, and the latter assumed a contract which the engineer of the railway company had made with one Rivinac, but which is conceded to have been, in fact, made with Rivinac and Crawford. The construction of this contract presents one of the principal questions raised on this appeal; for, if Rivinac and Crawford were independent contractors, as this term is understood in the law of negligence, then the defendant is not liable to the plaintiff, while, if they were merely agents or servants of the defendant, then under the findings of the jury the defendant must respond in damages. The contract has been construed by the court below as involving the defendant in liability, and we are to determine if this ruling is correct. The contract provides, aside from the formal parts, that:

"The said R. F. Rivinac agrees to employ and work on the grading of the roadbed of the said railroad, at such points and in such numbers as may be designated by the chief engineer of the said railroad, certain foremen, laborers, quarrymen, teams, wagons, carts, etc., and supply them with the necessary tools, such as picks, shovels, axes, drills, hammers, etc., and that the rate of pay for the above shall be the lowest rate at which they can be obtained, and shall in no case exceed, without the special consent of the chief engineer of the railroad, the following rates: [Here follows a schedule of prices not necessary to be considered.] The said R. F. Rivinac further agrees to give his personal attention to superintending the work, and see that each of the employés gives an honest day's work to the railway company, and to give every facility to the timekeeper of the railway to take account of the force and check the pay rolls."

What is it that Rivinac agrees to do? He does not undertake to construct any roadbed for the railway company. He is under no obligation to construct a rod of roadway. His contract is to "employ and work on the grading of the roadbed, * * * at such points and in such numbers as may be designated, * * * certain foremen, laborers, quarrymen, teams, wagons, carts, etc., and supply them with the necessary tools," and he agrees that in no event, without special authorization, shall the pay for the above exceed certain fixed figures. In addition to this, he agrees, not that he will do any work of con-

117 N.Y.S.—26

structing a roadbed, but that he will "give his personal attention to superintending the work and see that each of the employés gives an honest day's work to the railway company." He is not contracting for the construction of the roadbed, but for the employment of such numbers of laborers, teams, etc., as the chief engineer shall designate, and to personally see to it that the laborers, teams, etc., give the railway company a fair day's work. Is there anything to this agreement on the part of Rivinac more than a personal employment to gather up a working crew and to furnish them with light tools, within certain limitations as to price? Has he anything to do with the work of constructing the roadbed, independent of the chief engineer?

But let us see what the railway company agrees to do on its part. The contract continues:

"For the faithful performance in the above by the contractor, the New York, Westchester & Boston Railway Company agrees to refund to the said R. F. Rivinac the amount paid in wages to the above-mentioned employés, and the amount paid by the said R. F. Rivinac for any material used in the grading of the said railway which may be authorized by the chief engineer, together with 10 per cent. additional to the amount of said pay rolls and bills as a compensation for the personal services of the said R. F. Rivinac and for the tools furnished by him."

That is, for the faithful performance of the agreement to "employ and work on the grading of the roadbed" such laborers and teams as the chief engineer shall designate the railway company undertakes to pay, not the agreed maximum figure, but such amount as Rivinac shall have paid in wages to the above-mentioned employés, and the amount paid for materials used in the grading which may be authorized by the chief engineer, together with 10 per cent. upon the amounts so expended, as personal compensation for services and use of tools. Not a man or a team is to be employed, except such as shall be designated by the chief engineer; not a dollar in wages or for materials is to be refunded or paid to Rivinac, except such as may be authorized to be made use of by the chief engineer; and yet we are asked to hold that this simple contract for organizing and superintending a working force, under the direction of the railway company's chief engineer, constitutes Rivinac and his associate independent contractors in the construction of this roadbed, which relieves the defendant, as successor to the railway company under the contract, from liability to the plaintiff as a servant of the defendant.

We cannot so hold. It is not the fair and reasonable construction of the agreement. Rivinac was simply contracting to bring together a working force to be used under the direction of the railway company, through its chief engineer, relying for his compensation upon a percentage of the wages, etc., to be paid to these workmen, and his agreement to "start the work promptly when notified by the chief engineer" was merely an agreement to begin the work of organizing this force upon demand, and this makes clear the further provision that "the agreement may be terminated at any time on 10 days' written notice." The fact that Rivinac is termed a contractor in the agree-

ment does not extend the contract to cover matters clearly outside of its scope.  It is quite common for men to make these percentage contracts, particularly since the modern influx of foreign laborers, who require a superintendent speaking their language, and they are generally referred to as contractors, without any one supposing that they are independent contractors upon the work which is in progress.  Rivinac was probably an independent contractor under the definition laid down in Sullivan v. Dunham, 35 App. Div. 342, 54 N. Y. Supp. 962, and 161 N. Y. 290, 55 N. E. 923, 47 L. R. A. 715, 76 Am. St. Rep. 274, in so far as the bringing together of a working crew was concerned; but he had no relation whatever to the work of constructing the roadbed.  That was, by the terms of the contract, intrusted entirely to the chief engineer of the railroad, who determined the number to be employed, the place where they were to work, the materials to be purchased, and the wages which were to become due.  This made the defendant liable, as the master, for the manner in which the work of constructing the roadbed was performed.

The only other question necessary to consider is the introduction in evidence of section 62 of the ordinances of the city of New York. The offer of this section was objected to, as appellant tells us in his main brief, on the ground that it was not properly shown that it was in effect at the time of the accident.  The plaintiff produced one Sullivan, journal clerk of the board of aldermen, who had with him "the general ordinances in reference to explosives of New York City"; and he testified that he had, in such ordinances, the ordinance in effect at the time of the accident, that he had a certified copy of a book published by authority of the board of aldermen, that the book showed when it took effect, and that the ordinances contained in the book were passed, as a whole, in December, 1903; and upon cross-examination he clearly showed that the ordinance was adopted in December, 1903, and that it had not been changed since.  This would probably be the presumption.  It being shown that the ordinance was duly adopted and in force in 1903, it would be presumed to continue in force until the contrary was shown, and the presumption is strengthened by the testimony of the witness.  In his reply brief the defendant's counsel urges various other objections to the ordinance being received in evidence; but the particular objection which was called to the attention of the trial court, and which was relied upon on the appeal, being without force, it is too late to urge other objections.  These must be deemed to have been waived.  The violation of an ordinance is some evidence of negligence, and the matter was properly submitted to the jury.  In this case the ordinance indicates what is a proper precaution to take in blasting.  It suggests a rule or method which has been found in practice to be proper in dealing with high explosives in blasting, and it was proper for the jury to have the same before them in considering the question of defendant's negligence.

We do not think the verdict of $9,000 for the loss of the use of a right arm, the breaking of three ribs, and the suffering which must have resulted, excessive for a man who had been earning $4 per day,

and we do not think the learned trial court erred in refusing the defendant's requests to charge upon the question of damages.

The judgment and order appealed from should be affirmed, with costs.

JENKS, BURR, and MILLER, JJ., concur.

GAYNOR, J. I concur, but not in the statement that the violation of the ordinance was "some evidence of negligence." It was the evidence, and sufficient evidence, of negligence. Its violation caused the injury. The piece of rock could not have got away if the ordinance had been obeyed. The phrase is misleading and inapplicable. If an injury happens from a violation of an ordinance or a statute obligation, it is the same as if it happened from a violation of a common-law obligation. The violation is no more "some evidence of negligence" in the one case than in the other. This ordinance required a prescribed cover over the blast which would prevent the flying pieces of rock, and it was not furnished and used.