Argued March 22, affirmed April 11, 1916.

# RUSK *v.* MONTGOMERY.*

(156 Pac. 435.)

**Evidence—Judicial Notice—City and Town Charters.**

1. The courts of Oregon will not take judicial notice of initiative charters of cities and towns.

[As to judicial notice of municipal ordinances, see note in Ann. Cas. 1914C, 1232.]

**Evidence—Presumptions—Continuance of Law.**

2. In an action against a city for personal injuries, where there is no averment or proof relative to whether an initiative charter has been adopted, it must be taken for granted that the city charter remains in force as shown by the special laws of the year in which it was enacted.

**Municipal Corporations — Liability for Injuries — Supervision of Wharves.**

3. The mere fact that a city passed an ordinance providing for a waterfront committee, who should have general supervision and control of all wharves and docks within the city, to see that all laws, ordinances and regulations governing them were enforced, etc., did not render the municipality liable for damages resulting from the negligence of the owner of a private wharf when a foot-passenger broke through a board.

From Coos: John S. Coke, Judge.

Department 2. Statement by Mr. Chief Justice Moore.

This is an action by Anna Rusk against R. R. Montgomery and the City of Marshfield to recover damages for a personal injury. At the time the plaintiff was hurt the defendant Montgomery was the owner of a lot 50 feet wide extending easterly through the middle of a block which is bounded on the north by Market Avenue, on the east by the wharf line on Coos Bay, on the south by Commercial Avenue, and on the west by Front Street. The west side of the block is wholly covered

---

*As to liability for safety of wharf or dock, see note in 61 L. R. A. 946.                                                                                   REPORTER.

with buildings, the rear ends of which vary in length and rest upon wharves. The decks of these wharves lie upon timbers supported by rows of piles driven into the earth and extend out to the wharf line. From this line west there have been put up several buildings so as to leave between them and the rear of the structures facing Front Street a driveway on the wharves of varying widths. On the east end of the wharf on Montgomery's lot stands one of these buildings, which is used for a fish market. The plaintiff, on January 28, 1914, was passing along the driveway on Montgomery's wharf going to the fish market, and as she reached a corner of that building she stepped upon a plank, the breaking of which precipitated her to the mud flats, the tide being then out. The complaint minutely describes the *locus in quo* and substantially alleges that the open space on the wharves had been used many years by the public generally as an unrestricted thoroughfare and a means of ingress and egress to and from the public wharves, markets, shops, etc., and as a passageway of necessity, with the knowledge and by the consent of the defendants; that the municipality adopted an ordinance June 20, 1889, defining the waterfront on Coos Bay, and on January 22, 1906, enacted another ordinance providing for the appointment of a waterfront committee and prescribing its duties, ''and at all times thereafter, the defendant city with knowledge of said way and that it was being used by the public generally as a way of necessity connecting Commercial and Market Avenues, regularly dedicated public highways within said city, allowed it to remain open as a public and unrestricted thoroughfare and means of ingress and egress to and from the public wharves, stores, shops, markets, and other places mentioned in preceding paragraphs of

this complaint, and led the public and the plaintiff to believe and held the same out as a public highway of and under the control of the City of Marshfield, and exercised control thereof''; that the defendants negligently maintained in the driveway rotten and defective planks which were known to them, or by the exercise of reasonable care on their part might have been so known. The complaint then charges that in consequence of such negligence the plaintiff fell and was injured by reason of the breaking of a plank in the wharf, thereby sustaining damages in the sum of $2,500, for which judgment was demanded.

The defendant Montgomery is not a resident of Oregon, and, not having been served with a summons, did not appear or answer.

The City of Marshfield answering denied the material averments of the complaint, and for a further defense alleged in effect that this defendant had no notice or knowledge of the rotten plank or of the hole in the private wharf; that such aperture had existed but a short time and by the exercise of the utmost care this defendant could have had no knowledge thereof; that the defect in the private wharf through which the plaintiff stepped was open and obvious and could have been known to her by the exercise of reasonable care; and that in consequence of her negligence in this respect the injury of which she complains resulted from her own carelessness in failing to observe the defect. The reply denied the allegations of new matter in the answer. The cause was tried and the jury in their general verdict found for the answering defendant. The jury also returned special verdicts as follows:

''First. Had the City of Marshfield, prior to the date of the accident complained of, recognized the place where the accident occurred as a public thoroughfare and assumed and exercised control over the same?

"Answer: No.

"Second.    Had the City of Marshfield notice of the particular defect from which the accident complained of resulted, or should it in the exercise of reasonable care have known thereof prior to the date of the accident?

"Answer: No."

From a judgment entered on the general verdict, the plaintiff appeals.                                    AFFIRMED.

For appellant there was a brief submitted over the name of *Messrs. Stoll & Hodge.*

For respondent there was a brief over the names of *Mr. J. T. Brand* and *Mr. John D. Goss,* with an oral argument by *Mr. Brand.*

Department 2.    Opinion by MR. CHIEF JUSTICE MOORE.

Exceptions having been taken to parts of the court's general charge, it is contended that errors were committed in instructing the jury as follows:

"I further instruct you that a reasonable time to make repairs after the city had, or should have had, knowledge of the defect, must elapse before the city can be held liable for injuries resulting from such defect; that is, the city is, as a matter of law, entitled to a reasonable time in which to repair the defect after such knowledge or notice of the same as I have defined to you, and if you find that such length of time had not elapsed after the city had, or should have had, such knowledge or notice, then your verdict should be for the defendant.    There has been something said in the trial of this case as to an ordinance of the city with relation to public wharves and docks.    I instruct you that an ordinance of the City of Marshfield has been introduced in evidence, but the effect of that ordinance is for the court to determine, and you are instructed

that the city cannot be held responsible in damages for its neglect or failure to enforce said ordinance; that is to say, the mere failure of the city to enforce its ordinances does not give the basis for damages, the question being in this case as to whether or not the wharf was a public wharf, and whether the city had exercised control over it as such. You are further instructed that the passage of this ordinance of itself does not charge the City of Marshfield with responsibility for the condition of the place where the accident occurred. Nor do the provisions of the city charter of the City of Marshfield which give the city certain powers with reference to the waterfront of said city of themselves render the city liable to keep in repair the place where this accident occurred. * * If you find from a perponderance of the evidence that the place of this accident complained of was intended for the use of pedestrians and similar light traffic only and the same was reasonably safe for such use until a short time before the accident complained of, and that the actual defect by reason of which the plaintiff was injured was not known to the defendant and had not existed for such a length of time that the defendant should have known of it in the exercise of reasonable diligence, then the fact, if you find it to be a fact, that the wharf was old and not strong enough for vehicular traffic is immaterial. * * The court instructs you, gentlemen of the jury, further, on this question as to whether or not the wharf was a public wharf, that it is a question for you to determine from the evidence, and, as I have said, the mere passing or adopting of the ordinance, or mere provisions of the charter of the City of Marshfield, which have been referred to, would not of themselves make of this way a public way, the purpose of the ordinance being to have control over the wharves as such. They were not of themselves sufficient to make of this wharf a public wharf or thoroughfare, were not sufficient of themselves to create and make of this wharf a public way. The question for you to determine from all the evidence is whether this was a public way, whether under all the circumstances and

from all the evidence it was a public way. If it was a public way and was under the control of the city, or if the city had taken control and exercised control over it as a public way, then the city defendant would be liable if the other facts and issues necessary to entitle plaintiff to recover had been proven. This is a question of fact, as I have said, for you to determine from the evidence and under all the instructions which I have given you."

A copy of Ordinance No. 240, approved January 22, 1906, was received in evidence and reads:

"The City of Marshfield does ordain as follows:

"Section 1. At the first meeting of the common council in January of each year, or as soon thereafter as convenient, the mayor shall appoint from the members of such common council a waterfront committee of three members.

"Section 2. A. The waterfront committee shall have general supervision and control of all wharves and docks within the city, and shall keep themselves informed as to the condition of all wharves and docks, public or private. B. They shall have charge of the building or repair of all public wharves and docks. C. They shall have and exercise general supervision over the harbor, within the corporate limits of the city, and shall see that all laws, ordinances, and regulations governing the same are enforced. D. They shall endeavor to secure an open and uniform waterfront, and an open unobstructed roadway or street along the same. E. They shall make recommendations to the common council from time to time as to the needs of the waterfront."

W. G. Lawhorn, as a witness for the plaintiff, having testified he was street commissioner of the City of Marshfield and acquainted with the open space on the wharves between Commercial and Market Avenues, was asked:

"Did you ever notify any occupant of property along that way, or the owner of it, since you have been street commissioner, to repair the same?

He replied:

"A few years ago, three or four years ago, we used to notify people there, when I first came on as street commissioner, we used to notify the people when there was a hole broke in the street anywhere to fix it, just the same as we would if we were on the county road some place and found a hole there we would have notified the supervisor to go and fix it.

"Q. Do you recall any circumstance of having made a repair on this walk or plankway yourself and then required the property owner to pay the city for the same?

"A. No, sir.

"Q. Do you know of such a repair having been made and the property owner being required to pay the city for it?

"A. I remember one case where the property owner wanted—he said he could not get a man to repair his walks and wanted to know if I would help him repair it, and I did, and he paid the city for it.

"Q. You had previously notified him to repair it, did you?

"A. No; not that I remember of."

On cross-examination this witness was asked:

"As street commissioner did you ever do anything to this walkway or wharf?

"A. I never did, only as I say in this one case where they got me to fix the wharf, that was Mr. Rasmussen.

"Q. That was acting for him privately?

"A. Yes, sir.   He tried to get men to fix it and he could not, and I told him I would help him, and I did."

Mr. Lawhorn also appeared as a witness for the defendant and testified that a few days prior to the accident he passed over the wharf where the plaintiff was hurt and did not observe any breaks in the planks. He was asked:

"Was that observation such that if there had been a break you would have noticed it?"

He replied:

"I think I would have noticed it. We was down there looking for those things."

On cross-examination he testified that just prior to the accident there had been a fire near the place where the plaintiff was subsequently injured, and that he had been there several times to see the condition of the premises. His testimony further reads:

"Q. Did you look up defects in the sidewalk or planks? What were you looking after?

"A. Not particularly; just walking through there. Of course, we are always in the habit of looking for things, and if there had been a hole I am satisfied I would have seen it. * *

"Q. Why did you take that trip down through there?

"A. I was in there after this fire looking around where they were hauling this lumber and stuff."

On redirect examination attention was called to the break in the wharf which the witness discovered about 20 minutes after the accident, and the following question was directed to him:

"You say you put a board over that hole?"

He answered:

"Yes; I put a board over it.

"Q. How did you come to do that?

"A. I thought it would be a good idea to cover it up. Somebody might come along and get into it."

1, 2. The foregoing is deemed to be a fair synopsis of all the testimony that is incorporated in the bill of exceptions. Based upon this evidence and invoking provisions of the charter of the City of Marshfield, enacted by the legislative assembly (Sp. Laws 1905, p. 205), as asserted in the brief of plaintiff's counsel

to have been amended by an exercise of the initiative power by the legal voters of that municipality at elections held therein August 24, 1907, and December 7, 1909, respectively, and upon the ordinance hereinbefore quoted, it is argued the jury should have been instructed that it was incumbent upon the city to keep the wharf and way in good repair, and for any failure to perform that duty or negligence in respect thereto the municipality was liable for the resulting damages. It is not alleged in the pleadings nor was any evidence received at the trial, so far as can be ascertained from an inspection of the bill of exceptions, that the charter of the City of Marshfield, enacted by legislative assembly, has been amended by a vote of the qualified electors of the municipality. The courts of Oregon will not take judicial notice of initiative charters of cities and towns: *Birnie* v. *La Grande,* 78 Or. 531 (153 Pac. 415); *Chan Sing* v. *Astoria,* 79 Or. 411 (155 Pac. 378). In the absence of any averment or proof upon the subject it must be taken for granted that the city charter remains in force as printed at page 205 et seq. of the Special Laws of Oregon of 1905. Section 28 thereof, so far as important herein, reads:

"The council has power and authority within the City of Marshfield— * * 23. To regulate the use of the streets, sidewalks, crosswalks, highways, and public places for foot passengers, animals, vehicles, carts, street railways, or locomotives. * * 35. To lay out and construct streets and alleys above and below the ordinary low-water line of Coos Bay; to define, establish, and regulate the waterfront line of said city on Coos Bay, and to restrain, regulate, or remove any structure which shall extend beyond said line; to define, establish, and regulate a building line along the waterfront of said city on Coos Bay, and to restrain, regulate, or remove any building or structure which shall extend beyond said line; and to build, construct, and regulate

landings at the foot of streets and alleys terminating at said waterfront. * * 36. To build, construct, repair, and regulate public wharves and docks along the waterfront line of said city on Coos Bay, and fix the rate of wharfage and dockage thereof. * * 37. To regulate the erection and repair, and provide wharves and docks, and to fix and regulate the rates of wharfage and dockage thereof.''

Section 48 of the charter provides:

''The council shall have power and authority whenever it deems it expedient to establish or alter the grade of and to improve any street, alley, avenue, or park thereof, now or hereafter laid out or established within the corporate limits of the city, and the manner and kind of such improvements shall be such as the council may provide, and the power and authority for improving streets shall include the power and authority of improving or repairing sidewalks, crosswalks, pavements, or curbing of any street, avenue, or alley; to provide for the construction, cleaning, and repairing of the streets, sidewalks, and crosswalks by the owners of the lots or tracts of land adjacent thereto, or by the city at the expense of the said owner or owners.''

3. A map of the block referred to herein shows that Commercial Avenue and Market Avenue terminate on the United States harbor line on Coos Bay. The City of Marshfield under the authority conferred by the provisions of the charter quoted could probably have constructed a public dock or wharf so as to connect these highways with the navigable waters of that bay, though the fee in the avenues may have been held by abutting owners: Dillon, Mun. Corp. (5 ed.), §§ 262, 271; 1 Farnham, Waters and Water Rights, p. 565; Gould on Waters, § 106; 2 Smith, Mun. Corp., § 1314; *Williams* v. *Gainesville,* 150 Ala. 177 (43 South. 209, 124 Am. St. Rep. 66, 14 Ann. Cas. 1134). Whether or not any public wharf has been built by the City of Marshfield

is not disclosed by the evidence before us. In *Bond v. Wool,* 107 N. C. 139, 148 (12 S. E. 281, 284), it is said:

"In the absence of any specific legislation on the subject, a littoral proprietor and a riparian owner, as is universally conceded, have a qualified property in the waterfrontage belonging, by nature, to their land, the chief advantage growing out of the appurtenant estate in the submerged land being the right of access over an extension of their waterfronts to navigable water, and the right to construct wharves, piers, or landings, subject to such general rules and regulations as the legislature, in the exercise of its powers, may prescribe for the protection of public rights in rivers or navigable waters."

Ordinance No. 240 of the City of Marshfield was authorized by its charter and manifests a proper exercise of police power for the protection of persons passing over or of property placed upon a private wharf in that municipality. Municipal supervision over a private wharf in the interest of the public does not render a municipality liable for the damages resulting from the negligence of the owner of such wharf: Gould on Waters (2 ed.), § 116.

The instructions complained of were proper, and when read in connection with the entire charge disclose a clear exposition of the law applicable to the facts involved.

The judgment should therefore be affirmed, and it is so ordered.    AFFIRMED.

MR. JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE HARRIS concur.

MR. JUSTICE EAKIN absent.