WALKER MOTOR EXCHANGE, APPELLANT, *v.* LINDBERG, RESPONDENT.

(No. 6,549.)

(Submitted January 7, 1930. Decided January 31, 1930.)

[284 Pac. 270.]

514

*Mr. Earle N. Genzberger, Mr. Horace W. Judson* and *Messrs. Arnot & Doyle,* for Appellant, submitted an original and a reply brief; *Mr. Genzberger* argued the cause orally.

*Mr. S. J. Rigney,* for Respondent, submitted an original and a supplemental brief and argued the cause orally.

MR. JUSTICE FORD delivered the opinion of the court.

On April 16, 1927, one T. C. Huffaker, at Oklahoma City, Oklahoma, executed and delivered to plaintiff his promissory note for $850, the balance of the purchase price for a Buick automobile, and, to secure payment, executed and delivered a chattel mortgage upon the automobile. The mortgage was executed and delivered as provided by the laws of Oklahoma, and was, on April 18, filed with the register of deeds of Oklahoma county.

The mortgage provided that the mortgagor "will not attempt to sell, assign or dispose of said goods or chattels or any interest therein, or remove or permit the same to be removed from the county wherein she, he or it resides without the written consent of said mortgagee." It also contained a provision that, if default be made in the payments, or if the mortgagor should fail to perform any of the covenants therein

contained, or if the mortgagee should deem the debt or security unsafe or insecure, the mortgagee "may at said mortgagee's option (notice of which option is hereby expressly waived) foreclose this mortgage by action or in any manner authorized under the laws of Oklahoma, affecting foreclosure of chattel mortgage, and said mortgagee is hereby authorized to enter upon the premises where said goods and chattels may be, and remove by replevin or otherwise and sell the same and all equity of redemption of the mortgagor therein."

The automobile was removed from Oklahoma without the consent or knowledge of plaintiff. In November, one C. G. Howard sold the car to defendant, who acted in good faith and had no information of plaintiff's mortgage. The evidence shows that Huffaker and Howard is one and the same person. On November 5, plaintiff wired the sheriff at Cut Bank to "pick up and hold" the car "which was removed from this state without our permission." Soon after the receipt of this wire, the sheriff made demand upon defendant for the automobile, but possession thereof was not surrendered. Thereafter, and in January, 1928, plaintiff instituted this action in claim and delivery. The usual affidavit and undertaking were filed, and the automobile was taken from defendant's possession by the sheriff.

The complaint, in addition to the usual allegations in claim and delivery actions, pleads the laws of Oklahoma relating to corporations, and alleges compliance by plaintiff with such laws; the laws relating to the execution and filing of chattel mortgages in that state are likewise pleaded, and it is alleged that an affidavit of good faith on the part of the mortgagee is not required under the laws of that state.

Defendant answered, denying all the allegations of plaintiff's complaint and alleging affirmatively that he purchased the automobile in Glacier county; that it had for a long period of time prior thereto been in use openly and continuously in and about Glacier county, and at the time of the purchase he had no notice, actual or constructive, of plaintiff's mortgage.

Trial was had before the court, sitting without a jury, and judgment entered for defendant. Plaintiff's motion for a new trial was denied, and it appeals from the judgment.

The first question presented for determination is whether we will recognize the lien of the chattel mortgage executed in conformity with the laws of the state of Oklahoma.

It is almost universally held that, "where the parties reside, and the property is located, at the place where the mortgage is executed, its validity, construction and effect are determined by the law of that place." (11 C. J. 422; 5 R. C. L. 587; *Pinney* v. *Nelson*, 183 U. S. 144, 46 L. Ed. 125, 22 Sup. Ct. Rep. 52; *Platner* v. *Vincent*, 187 Cal. 443, 202 Pac. 655; *First Nat. Bank* v. *Ripley*, 204 Iowa, 590, 215 N. W. 647; *Mercantile Acceptance Co.* v. *Frank*, 203 Cal. 483, 57 A. L. R. 696, and note, 265 Pac. 190.)

"If a chattel mortgage is valid where it is made, and is ▉ executed and recorded according to the laws of the state or country of its execution, as a general rule it will be enforced in the courts of another state or country as a matter of comity, although it is not executed or recorded according to the requirements of the law of the latter state. Where property is removed into a state other than that in which the mortgage thereon was executed, ordinarily the rights of the mortgagee are protected under the general rule stated even though subsequently to its removal and without notice or knowledge of the mortgage others acquire rights or interests therein." (5 R. C. L. 987.) We are satisfied that upon the great weight of authority, as well as upon reason, the effect and validity of the mortgage before us must, on principles of comity, be determined by the laws of Oklahoma.

Defendant contends that plaintiff failed to prove that an affidavit of good faith was not required under the laws of Oklahoma, and, in the absence of such showing, we must presume that the law of that state in this regard is the same as the law of Montana.

Section 7655, Compiled Statutes of Oklahoma, which was pleaded and proven by plaintiff, provides: "A mortgage of

personal property must be signed by the mortgagor. Such signature may either be attested by acknowledgment before any person authorized to take acknowledgments of deeds, or it may be signed and validated by the signature of two persons not interested therein. Mortgages signed in the presence of two witnesses or acknowledged before an officer, as herein provided, shall be duly admitted of record." Thus it is seen that this section provides all that is required to complete the execution of a chattel mortgage: the signing by the mortgagor; its acknowledgment before an officer authorized to take acknowledgments, or validated by the signature of two persons not interested in the transaction. When so signed and acknowledged, or attested, its execution is complete, and it is entitled to be filed for record. We think it is clear that an affidavit of good faith is not required under the laws of Oklahoma.

But counsel contends that the proof fails to show that the attesting witnesses were disinterested. Such a showing was not necessary. It has been held by the supreme court of Oklahoma that, when it does not appear from the face of the instrument that the subscribing witnesses are legally disqualified by reason of their interest in the property mortgaged or in the mortgage, the instrument may properly be received for record, and such recording will constitute constructive notice to subsequent creditors or those acquiring an interest in the mortgaged property. (*Lankford* v. *First Nat. Bank*, 75 Okl. 159, 183 Pac. 56.) Here it does not appear upon the face of the chattel mortgage before us, or otherwise, that the attesting witnesses were in any manner interested in the transaction.

Counsel for defendant insists that plaintiff failed to prove its corporate existence, since it failed to show that, after the issuance of the certificate of incorporation by the secretary of state of Oklahoma, the corporation adopted by-laws as required by section 5328, Oklahoma Compiled Statutes of 1921. Whether the adoption of a code of by-laws is a necessary prerequisite before a corporation comes into existence need not be decided, since the defendant in his affirmative

defense alleged "that the plaintiff is a foreign corporation, or purports to be a corporation with its situs in the state of Oklahoma," and is not licensed to carry on or engage in business in Montana. In view of this allegation, defendant cannot now question plaintiff's corporate existence.

Upon the trial, authenticated copies of the laws of Oklahoma relating to corporations were introduced in evidence, the secretary of state certifying "that the following and hereto attached is a true copy of [designating various sections] Oklahoma Compiled Laws 1921." Counsel contends that this is insufficient and does not prove that the laws were in effect when plaintiff was incorporated or when the action was commenced. The contention is without merit. The courts are warranted in reposing confidence in the permanence and stability of the laws of a sister state to the extent that, when a statute is proven to have existed, it will be presumed to remain in force, in the absence of evidence showing its appeal. (*Hill* v. *Condon*, 14 Ala. App. 332, 70 South. 208; *In re Huss*, 126 N. Y. 537, 12 L. R. A. 620, 27 N. E. 784; *Pittsburgh Ry. Co.* v. *Macy*, 59 Ind. App. 125, 107 N. E. 486; *Rusk* v. *Montgomery*, 80 Or. 93, 156 Pac. 435; *Bulke* v. *City & County Contract Co.*, 133 App. Div. 113, 117 N. Y. Supp. 400; *Cochran* v. *Ward*, 5 Ind. App. 89, 57 Am. St. Rep. 229, 29 N. E. 795, 31 N. E. 581; 10 R. C. L. 873.)

It is argued that plaintiff did not prove that claim and delivery is the proper remedy under the laws of Oklahoma. The rule is well established that the affording of remedies and the modes of procedure in one state for enforcing a contract made in another, are governed solely and exclusively by the laws of the place where the action is instituted. (5 R. C. L. 941; Story on Conflict of Laws, 8th ed., pp. 556–558; *Owsley* v. *Bowden*, 161 Ga. 884, 44 A. L. R. 795, 132 S. E. 70; *Reutenik* v. *Packing Co.*, 132 Wash. 108, 37 A. L. R. 830, 231 Pac. 773; *Haltom* v. *Nichols & Co.*, 64 Okl. 185, 166 Pac. 745; *Krebs* v. *Sawyer*, 162 Iowa, 593, 144 N. W. 345.)

It is claimed, in effect, by defendant, that the adoption of this rule does not afford adequate pretection to the citi-

zens of this state and conflicts with another well-established rule that a state will not give effect to the laws of a sister state on the principle of comity, when the effect would be injurious to the state or its citizens. In considering this argument, we must consider this rule in all its aspects. While it is true that such a rule imposes upon the citizens of this state the duty to exercise care and diligence in purchasing property recently brought into the state, it is equally true that it affords protection to our citizens and secures them against the criminal and unlawful acts of mortgagors of property situated in this state and removed to other states. It is a well-known fact that vast sums of money are loaned upon automobiles, livestock and other personal property; to accept the rule contended for by defendant would be to jeopardize this large investment. We think it preferable and more desirable that an innocent purchaser of personal property, brought into the state under such circumstances as surround the transaction with which we are concerned here be the sufferer than to jeopardize the investments of our own citizens and make Montana an asylum for the unscrupulous mortgagors from sister states and thus a party to every such fraudulent transaction.

A different question would be presented, and one not involved here, if plaintiff knew that the mortgaged automobile had been removed from Oklahoma or had consented to its removal, or, after it had been removed, had acquiesced therein and taken no steps to follow it into Montana or file its mortgage here, and permitted the rights of innocent third parties to attach.

For the foregoing reasons, the judgment is reversed, and the cause remanded to the district court, with direction to enter judgment for plaintiff.

Mr. Chief Justice Callaway and Associate Justices Matthews, Galen and Angstman concur.